IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03265-REB-KLM

MARCEL PREECE

      Plaintiff,

v.

SHERIFF JOHN COOKE,
UNDERSHERIFF JACK MCGRATH,
BUREAU CHIEF STERLING GEESAMAN,
COMMANDER MORGAN MAY, and
RICK DILL,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 10)** [#30][1] (the "Motion"). Plaintiff Marcel Preece, who proceeds in this matter pro se, filed a Response to the Motion [#35] and Defendants filed a Reply [#36] in further support of the Motion. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to the undersigned for a recommendation regarding disposition [#31]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS**

---

[1] "[#30]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

1

that the Motion [#30] be **GRANTED**.

## I. Background

### A.    Allegations

On December 31, 2013, Plaintiff filed his Amended Complaint [#10] (the "Complaint") alleging that Defendants violated his Fourteenth Amendment[2] rights by (1) subjecting him to conditions that amounted to cruel and unusual punishment during the periods May 24, 2012 through July 27, 2012 and August 26, 2012 through December 5, 2013, while he was incarcerated at Weld County Jail and (2) not providing him a sufficient process for challenging his placement in administrative segregation. *Compl.* [#10] ¶¶ 2, 5, 7, 15, 28. Plaintiff brings these claims pursuant to 42 U.S.C. § 1983. *Id.* at 4.

Specifically, Plaintiff alleges that he was denied access to fresh air, outdoor exercise, a "pull-up bar," and access to natural light. *Id.* ¶¶ 1, 9-10. Plaintiff further alleges that as a result, he "suffered from loss of muscle size and strength as well as pain from a loss of muscle around a previously injured shoulder" and "a great deterioration of his mental

---

[2]   Plaintiff states that during the period in question, he "was a pretrial detainee housed on ad-seg status at the Weld County Jail." *Compl.* [#10] ¶ 40. If Plaintiff was a pretrial detainee, Plaintiff's claim that he was subjected to cruel and unusual punishment would be properly brought under the Fourteenth Amendment. *Newton v. Moten*, 124 F.3d 217, *1 (10th Cir. Sept. 2, 1997) (table decision). Defendants treat this claim as an Eighth Amendment claim. *Response* [#30] at 5. If Plaintiff was a convicted inmate, his claim would be governed by the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Based on the facts alleged in the Complaint, it is unclear to the Court whether Plaintiff was a pretrial detainee or a convicted inmate during the period in question. However, because Plaintiff specifically alleges that he was a pre-trial detainee, the Court will analyze Plaintiff's cruel and unusual punishment claim under the Fourteenth Amendment. However, "[u]nder the due process clause, detainees are entitled to the same degree of protection regarding prison conditions as that afforded convicted inmates under the Eighth Amendment" and "[t]he same analysis applies to both types of claims." *Harris v. Matthews*, 2011 WL 3510931, at *4 (D. Colo. July 25, 2011) (citing *Barrie v. Grand Cnty., Utah*, 119 F.3d 862, 867 (10th Cir. 1997) and *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)). Therefore, regardless of whether Plaintiff's cruel and unusual punishment claim is analyzed under the Eighth Amendment or the Fourteenth Amendment, the result would be the same.

health." *Id.* ¶¶ 11-13; *see also id.* ¶ 6.  Plaintiff maintains that he "copes daily with anxiety, depression, stress, insomnia and many other maladies of the mind and body . . . . [that] he believes are due to the length and harshness of the conditions of his confinement to the segregation unit." *Id.* ¶ 13.

Plaintiff also brings a Fourteenth Amendment due process claim against Defendants. He alleges that Defendants "denied [him] the opportunity to appeal or otherwise refute allegations made in his ad-seg notice," which he argues is a violation of his Fourteenth Amendment procedural due process rights. *Id.* ¶ 2; *see also id.* ¶ 28.  He further maintains that Defendants denied him "programming to change what they deem as negative behavior" and "any significant means to work his way off of his ad-seg status." *Id.* ¶ 3; *see also id.* ¶ 31.  Plaintiff alleges that inmates are reviewed monthly regarding their status within the facility but that the "reviews are based on vague claims of gang or [ ] Security Threat Group activity or negative jail logs." *Id.* ¶ 30.  Plaintiff maintains that as a result the inmates "cannot defend themselves against the claims." *Id.*  Plaintiff avers that as a result of this process he has suffered "mental anguish, stress, and pain," which has "caused him to deteriorate physically." *Id.* ¶ 33.

In support of his due process claim, Plaintiff points to one particular incident.  He alleges that inmates placed in administrative segregation are reviewed every 30 days and that "[i]t is the custom for officers or commanders at the jail to serve ad-seg inmates with a written notice of an ad-seg review." *Id.* ¶ 41.  Plaintiff avers that he was not served with his review that was due on January 2, 2013.  *Id.* ¶ 42.  Plaintiff alleges that he attempted to appeal the January 2, 2013 review but that he "had no opportunity to dispute the claims in the review [because] he never knew what they were." *Id.* ¶ 43.  Plaintiff maintains that

"any form of confinement to ad-seg after this violation [was] unlawful and unconstitutional." *Id.* ¶ 45.

With regard to Defendant Sheriff John Cooke ("Cooke"), Plaintiff alleges that he "is in charge of the jail as a whole . . . [and] oversees any making of policy and procedure as well as ensuring that officers are adequately trained to perform their duties without violating the rights of detainees." *Id.* ¶ 18; *see also id.* ¶ 46. Plaintiff avers that Cooke "could have made the changes necessary to give inmates the proper and acceptable amount of process" regarding the reviews of their placement in administrative segregation and "had the power to see that ad-seg [inmates] were given classes to correct their behavior and make their stay in ad-seg only as long as necessary to ensure that they are no longer a threat to the security of the facility." *Id.* ¶ 34; *see also id.* ¶ 46.

Similarly, Plaintiff alleges that Defendant Undersheriff Jack McGrath ("McGrath") "oversees the enforcement and making of policy and procedure." *Id.* ¶ 19. Plaintiff further alleges that Defendant McGrath "shares responsibilities with" Defendant Cooke and, therefore, "shares in the violation of the plaintiff['] rights" for the reasons stated against Defendant Cooke. *Id.* ¶ 47.

Regarding Defendant Bureau Chief Sterling Geesaman ("Geesaman"), Plaintiff alleges that he oversees the internal grievance process and "has the ability to make the necessary changes in policy and procedure to allow outdoor rec. for ad-seg or punitive-seg detainees." *Id.* ¶ 20. Plaintiff maintains that Defendant Geesaman ignored Plaintiff's "pleas in the grievance process" and affirmed Plaintiff's assignment to administrative segregation "without any sign of relief from ad-seg or programming to correct behavior." *Id.* ¶ 36. Plaintiff avers that Defendant Geesaman "has the ability to remove an inmate from ad-seg

and therefore relieve him of the harsh conditions of confinement . . . ." *Id.* Plaintiff further alleges that Defendant Geesaman "affirmed ad-segs based on vague details therefore keeping [Plaintiff] on ad-seg for an extremely long period without proper process." *Id.* With regard to Plaintiff specifically, he alleges that Defendant Geesaman "should have turned over the plaintiff[']s ad-seg when it was obvious that he didn't receive adequate process." *Id.* ¶ 48.

Plaintiff alleges that Defendant "Commander Morgan May [("May")] conducts the ad-seg reviews monthly for" Plaintiff and that he "violated [Plaintiff's] right to due process by submitting vague ad-seg reviews." *Id.* ¶¶ 21, 37. Plaintiff further maintains that Defendant May "should have made sure a physical copy [of his administrative segregation review] was given to the plaintiff. His failure to do so has caused the violation of the plaintiff[']s right to due process." *Id.* ¶ 49. According to Plaintiff, Defendant May "did not give [Plaintiff] enough information to refute the claims against him," which "caused [Plaintiff] to be housed in ad-seg longer than necessary." *Id.* ¶ 37. Plaintiff maintains that Defendant May put Plaintiff in administrative segregation and when "the long-term effects cruel and unusual punishment . . . can have on a person . . . . . w[ere] brought to his . . . attention through the grievance process[,] he . . . chose to disregard [Plaintiff's] safety and human needs." *Id.* ¶ 21.

Finally, with regard to Defendant Rick Dill ("Dill"), Plaintiff alleges that he held the positions of Undersheriff and Bureau Chief during a portion of the time when Plaintiff was in administrative segregation and therefore maintains that Dill "is responsible in part for the behavior attributed to those currently holding that job title." *Id.* ¶ 22; *see also id.* ¶¶ 38, 50.

Plaintiff avers that the Defendants who either allegedly placed him in administrative

segregation, affirmed that decision, or "turn[ed] a blind eye and allow[ed] th[e] treatment

to continue," "acted with prior knowledge of the harshness of the conditions of confinement

. . . ." *Id.* ¶ 24. He alleges that his alleged lack of due process regarding his administrative

segregation review "has caused the plaintiff mental anguish, stress, and pain which has

[a]ffected his physical condition." *Id.* ¶ 51. As a result, Plaintiff seeks declaratory relief as

follows:

> a declaration that the denial of the plaintiff[']s fresh air, direct sunlight, regular outdoor exercise, and denial of a pull-up bar is unconstitutional. Also that in the future all ad-seg review must be specific and inmates must have enough information about jail logs to adequately understand the reason or behavior keeping them ad-seged and enable them to [defend] themselves in the appeal process. Lastly[,] a declaration that the [Defendants] must provide programs for the progression off of ad-seg that do not risk or compromise the Fifth Amendment of participants [sic], and must devise and institute a level program similar to the "quality of life" program offered at C.S.P., with visible level progression.

*Id.* ¶ 53. Plaintiff also requests preliminary and permanent injunctions

> ordering [Defendants] to[:] 1) install a pull-up bar or jungle gyms in all housing units of the jail; 2) cease housing ad-seg inmates in any unit where they are denied fresh air, direct sunlight and access to an exercise bar; 3) all ad-seg notices must be signed by the inmate and the officer serving it; 4) [Defendants] must institute a level program immediately; [and] 5) all reviews must be specific and negative logs should not constitute reten[t]ion on ad-seg.

*Id.* ¶ 54. In addition, Plaintiff seeks compensatory and punitive damages and

reimbursement of costs. *Id.* ¶¶ 55-56.

**B.    The Motion**

In the Motion, Defendants argue that the Complaint fails to meet Federal Rule of

Civil Procedure 8's pleading standards. *Motion* [#30] at 4-8. Defendants further argue that

Plaintiff does not have a protected liberty interest regarding his placement in administrative

segregation. *Id.* at 6-7. In addition, Defendants argue that they[3] are entitled to qualified immunity. *Id.* at 8-10.

In his Response, Plaintiff argues that his Complaint meets Rule 8's pleading requirements. *Response* [#35] at 2. He states that he "has made a sincere effort to convey the conditions of his confinement to the Court [and] the Defendants [and] the extent [and] severity of the obvious violations of his rights as is his obligation." *Id.* He notes that "any further proof will only be forthcoming in discovery." *Id.* Plaintiff further argues that "[t]he fact that ad-seg at the Weld County Jail and the conditions involved are atypical and unduly harsh create a liberty interest." *Id.* at 3. Finally, Plaintiff maintains that Defendants' alleged "violation of [c]onstitutional [r]ights defeats qualified immunity." *Id.*

In their Reply, Defendants revisit their arguments made in the Motion. Specifically, they argue, "Plaintiff's response . . . offers no further specificity or any identification regarding his alleged claims, and how the claims pertain to any purported violation of Plaintiff's Fourteenth Amendment rights by the Defendant in this matter." *Reply* [#36] at 1. Defendants further argue that Plaintiff's allegations in support of his claim of cruel and unusual punishment are not specific enough to support a claim for relief. *Id.* at 2. In addition, Defendants aver that Plaintiff does not allege facts "evidencing how any of the Defendants are individually involved in creating a lack of 'humane conditions of confinement.'" *Id.* at 3 (citations omitted). Defendants maintain that Plaintiff does not have a liberty interest in his placement in administrative segregation and that they are entitled

---

[3] The Court notes that Defendants' use of the name "Morgan" in place of "May" on page 8 is a typographical error. *Id.* at 8. Defendant May's full name is Morgan May. *Compl.* [#10] at 3.

to qualified immunity.  *Id.* at 3-4.

## II.  Standard of Review

### A.     Fed. R. Civ. P. 12(b)(6) and 8(a)

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry." *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 429 F. App'x at 689.

**B.   Substantial Deference Accorded to Prison Administrators**

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage

9

prisons safely and effectively.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976).

Accordingly, courts should interfere with the management of prisons only under exceptional

and compelling circumstances.  *Taylor v. Freeman*, 34 F.3d 266, 268-70 (4th Cir. 1994).

Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring

the intervention of the federal courts in matters involving the administration, control and

maintenance by the sovereign states of their penal systems.  It is a delicate role assigned

to the federal courts to display that restraint so necessary 'in the maintenance of proper

federal-state relations.'"  *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation

omitted).  As such, "sweeping intervention in the management of state prisons is rarely

appropriate when exercising the equitable powers of the federal courts."  *Taylor*, 34 F.3d

at 269 (citations omitted).

**C.     Plaintiff's Pro Se Status**

The Court must construe the filings of a pro se litigant liberally.  *See Haines v.

Kerner*, 404 U.S. 519, 520-21 (1972); *Hall*, 935 F.2d at 1110.  The Court, however, should

not be the pro se litigant's advocate, nor should the Court "supply additional factual

allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his]

behalf""  *Whitney*, 113 F.3d at 1173-74 (citing *Hall*, 935 F.2d at 1110).  In addition, pro se

litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*,

17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

**A.     Fed. R. Civ. P. 8**

The twin purposes of a complaint are to give the opposing parties fair notice of the

basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Federal Rule of Civil Procedure 8 are designed to meet these purposes. *See TV Comm's Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992). Specifically, Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . ." Fed. R. Civ. P. 8(a). The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." "Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8." *Greenway Nutrients, Inc. v. Blackburn*, --- F.Supp.2d ---, 2014 WL 1243671, at *9 (D. Colo. March 26, 2014).

As the Court previously explained to Plaintiff, in order to state a claim in federal court, Plaintiff "'must explain what each defendant did to him or her; when each defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.'" *Order* [#6] at 2-3 (quoting *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007)). Furthermore, "a claim for supervisory liability must be supported by allegations that demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind." *Id.* at 2 (citing *Schneider v. City of Grand Junction Dept.*, 717 F.3d 760, 767-69

11

(10th Cir. 2013)).  Finally, the general rule that pro se pleadings must be construed liberally has limits and "the [C]ourt cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

As noted above, Federal Rule of Civil Procedure 8 provides that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8 does not require a plaintiff to plead "'detailed factual allegations,'" a pleading that asserts only "'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Rather, a pleading must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Allegations that "are no more than conclusions are not entitled to the assumption of truth." *Id.* at 679.  The purpose of the pleading requirement is "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (internal quotations and citations omitted).

### 1.     Cruel and Unusual Punishment

With regards to Plaintiff's claim that his Fourteenth Amendment rights were violated because he was subjected to cruel and unusual punishment by being placed in administrative segregation, Plaintiff fails to offer any factual allegations against Defendants

McGrath, May, and Dill that would put them "on notice of [their] alleged misconduct sufficient to prepare an appropriate defense . . . ." *Kansas Penn Gaming, LLC*, 656 F.3d at 1215.   Accordingly, the Court concludes that Plaintiff fails to adequately plead a Fourteenth Amendment claim of cruel and unusual punishment against these Defendants. The Court thus **recommends** that Plaintiff's first claim for violation of the Fourteenth Amendment against Defendants McGrath, May, and Dill in their official and individual capacities be **dismissed without prejudice**.   *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).

Regarding Defendant Cooke, Plaintiff alleges that he "is in charge of the jail as a whole . . . [and] oversees any making of policy and procedure as well as ensuring that officers are adequately trained to perform their duties without violating the rights of detainees." *Compl.* [#10] ¶ 18; *see also id.* ¶ 46.   Plaintiff avers that Cooke "had the power to see that ad-seg [inmates] were given classes to correct their behavior and make their stay in ad-seg only as long as necessary to ensure that they are no longer a threat to the security of the facility." *Id.*   ¶ 34; *see also id.* ¶ 46.   Regarding Defendant Geesaman, Plaintiff alleges that he oversees the internal grievance process and "has the ability to make the necessary changes in policy and procedure to allow outdoor rec. for ad-seg or punitive-seg detainees." *Id.* ¶ 20.   Plaintiff avers that Defendant Geesaman "has the ability to remove an inmate from ad-seg and therefore relieve him of the harsh conditions of confinement . . . ." *Id.*   These factual allegations about Defendants Cooke and Geesaman are thin, but do "explain what each defendant did to [Plaintiff]; when each defendant did it; how the defendant's action harmed [Plaintiff]; and, what specific legal right the plaintiff

believes the defendant violated." *Nasious*, 492 F.3d at 1163. Accordingly, the Court concludes that Plaintiff has adequately plead a Fourteenth Amendment claim of cruel and unusual punishment against Defendants Cooke and McGrath for purposes of Rule 8. Therefore, the Court addresses Defendants' argument that these claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) below.

### 2. Due Process

Plaintiff's due process claim is based on his argument that the jail's review process did not allow him to challenge his continued placement in administrative segregation. *Compl.* [#10] ¶¶ 41-45. Defendants argue that, to the extent this claim is brought against Defendants in their official capacities, this claim also fails under Rule 8 because "the Complaint contains nothing more than conclusory allegations regarding any purported input respecting policy or custom . . . [and] [n]owhere are specifics offered respecting what particular actions of each Defendant allegedly harmed Plaintiff." *Motion* [#30] at 8.

Plaintiff offers no factual allegations against Defendant Dill that would support a due process claim. The Court thus **recommends** that Plaintiff's second claim for violation of the Fourteenth Amendment against Defendant Dill in his official and individual capacities be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127. While the allegations against the remaining Defendants are thin, the Court does not find that they fail to meet Rule 8's pleading standard and, therefore, addresses them below.

### B. Fed. R. Civ. P. 12(b)(6)

Because the Court found that Plaintiff's claim that he was subjected to cruel and unusual punishment against Defendants McGrath, May, and Dill and his due process claim

against Defendant Dill fail to meet Rule 8's pleading standard, the Court's analysis under Fed. R. Civ. P. 12(b)(6) is limited to Plaintiff's (1) cruel and unusual punishment claim to the extent it is asserted against Defendants Cooke and Geesaman and (2) due process claim to the extent it is asserted against Defendants Cooke, McGrath, Geesaman, and May.

Defendants seek qualified immunity on Plaintiff's claims for monetary relief against them in their individual capacities. *Motion* [#30] at 8-10.  Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity offers protection both from trial and the other burdens of litigation.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  When Defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process.  One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*  However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.*  The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim.  *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6 (D. Colo. Jan. 17, 2103) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Courts must determine whether the constitutional right was clearly established in

"the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Furthermore, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must have established the constitutional right. *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard Cnty.*, 494 F.2d 891, 903 (10th Cir. 2007).

### 1.    Constitutional Violation - Cruel and Unusual Punishment

As noted above, pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's proscription against cruel and unusual punishment. *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990). "Under the due process clause, detainees are entitled to the same degree of protection regarding prison conditions as that afforded convicted inmates under the Eighth Amendment." *Harris*, 2011 WL 3510931, at *4 (citation omitted). As a result, "[t]he same analysis applies to both types of claims." *Id.* (citation omitted). Therefore, the Court analyzes Plaintiff's cruel and unusual punishment claim under the framework of the Eighth Amendment. *Craig*, 164 F.3d at 495 ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims.").

16

The Court applies a two-part test when evaluating conditions of confinement claims. "To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component." *Id.* "The objective component requires that the alleged deprivation be sufficiently serious," and "[t]he subjective component requires the jail official to have a sufficiently culpable state of mind." *Id.* (quotation omitted).

The Tenth Circuit has explained this standard as follows:

> The objective component requires that the alleged deprivation be "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Although what constitutes cruel and unusual punishment under the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society," *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion)), the Constitution "does not mandate comfortable prisons," *id.* at 349, 101 S.Ct. 2392. To the contrary, jail conditions may be "'restrictive and even harsh'" without violating constitutional rights. *Barney,* 143 F.3d at 1311 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392). Indeed, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321 (internal quotation marks and citation omitted); *accord Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

> The subjective component requires the jail official to have a "sufficiently culpable state of mind." *Id.* at 297, 111 S.Ct. 2321. In the context of prison-conditions claims, the required state of mind is one of "'deliberate indifference' to inmate health and safety." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson,* 501 U.S. at 302-03, 111 S.Ct. 2321). In other words, the jailer is liable only if he or she "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 111 S.Ct. 2321. "It is not enough to establish that the official should have known of the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998).

*Craig*, 164 F.3d at 495-96. Regarding the subjective component, "deliberate indifference

entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Farmer*, 511 U.S. at 835.  This is essentially a question of whether the defendant was reckless by "disregard[ing] a risk of harm of which he [was] aware." *Id.* at 836-37.

Regarding the objective component, Plaintiff alleges that "the conditions of placement" in administrative segregation at the Weld County Jail "are extreme." *Compl.* [#10] ¶¶ 1, 9-10 (alleging that he was denied access to fresh air, outdoor exercise, a "pull-up bar," and access to natural light).   However, Plaintiff's allegations regarding the conditions of administrative segregation in Weld County Jail do not rise to the level of a sufficiently serious deprivation.  As a result, they do not allege a constitutional violation. *See Lewis v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 425 F.App'x 723, 727 (10th Cir. June 7, 2011) (finding that allegations that the plaintiff's jail "cell lacked daylight and adequate toilet privacy, that it was filthy and had to be sprayed regularly for bacteria, that the shower drain was clogged, that [the plaintiff] was allowed exercise only one or two times per week, and that the food was unappetizing" were "not optimal and understandably objectionable," but "do not rise to a constitutional violation.").   While prisons must provide humane conditions of confinement, in including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm, see *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008), "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).   Therefore, in the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail." *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994).  Prison conditions may be

18

"'restrictive and even harsh'" without violating constitutional rights. *Barney v. Pulsipher*, 143 F.3d 1229, 1311 (10th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Tafoya*, 516 F.3d 912, 916 (10th Cir. 2008).  Therefore, the Court concludes that Plaintiff's allegations that he was denied access to fresh air, outdoor exercise, a "pull-up bar," and access to natural light do not allege that he was deprived of a human need.

Given that Plaintiff does not allege sufficient facts to establish that Defendants violated his Eighth Amendment rights, it is unnecessary for the Court to determine whether Defendants are entitled to qualified immunity with regard to this claim.  *Dobbs v. Head Starts, Inc.*, 336 F.3d 1194, 1217 n.15 (10th Cir. 2003) (citations omitted) (upholding district court's ruling and finding that there was no need to reach the issue of qualified immunity because the defendants were objectively reasonable); *Schnebelen v. Porter*, 434 F.App'x 765, 766 (10th Cir. 2011).  In addition, because Plaintiff fails to allege a violation of his Eighth Amendment rights, the Court recommends that his first cause of action be **dismissed without prejudice** to the extent it is brought against Defendants Cooke and Geesaman in their individual and official capacities.  *See Reynoldson*, 907 F.2d at 127.

### 2.    Constitutional Violation - Procedural Due Process

Plaintiff brings a Fourteenth Amendment procedural due process claim against Defendants regarding the review of his placement in administrative segregation.  "The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV).  Procedural due

process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In general, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, a plaintiff must demonstrate that he possessed a protected liberty or property interest. *Id.* Second, a plaintiff must show that the procedures utilized which impacted his protected interest were inadequate under the circumstances. *Id.* at 1149.

Defendants argue that Plaintiff does not have a protected liberty interest in his placement in administrative segregation. *Motion* [#30] at 6-7. Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (stating that, for a liberty interest to exist, state law must create it with "language of an unmistakably mandatory character"). While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff*, 418 U.S. at 555-56.

In *Sandin v. Conner,* the Supreme Court held that an inmate's liberty interest is protected under the Due Process Clause if the restraints or conditions imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). The Tenth Circuit Court of Appeals has ruled that liberty interest

claims by prisoners are "to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis." *Steffey v. Orman,* 461 F.3d 1218, 1221 (10th Cir. 2006) (citing *Cosco v. Uphoff,* 195 F.3d 1221, 1224 (10th Cir. 1999) (other citations omitted)).   "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'"   *Cosco,* 195 F.3d at 1224 (alteration in original, quoting *Sandin,* 515 U.S. at 486).   "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life."   *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).   Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination . . . ."   *Beverati v. Smith,* 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has identified relevant factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme; (3) [whether] the placement increases the duration of confinement . . . ; and (4) [whether] the placement is indeterminate."   *DiMarco,* 473 F.3d at 1342.   However, the Court is "not constrained to apply the four factors that the *DiMarco* court considered potentially relevant" nor is it "bound to give more or less weight to any given factor."   *Rezaq v. Nalley,* 677 F.3d 1001, 1012 (10th Cir. 2012) (citations omitted).   Further, "any assessment must be mindful of the

primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *DiMarco,* 473 F.3d at 1342 (citation omitted).

In support of his Fourteenth Amendment claim, Plaintiff alleges that Defendants "denied [him] the opportunity to appeal or otherwise refute allegations made in his ad-seg notice." *Compl.* [#10] ¶ 2.  He further alleges that Defendants "held [him] for nearly one year after denying him the opportunity to appeal his review." *Id.* ¶ 3.  Plaintiff states:

> Ad-seg at the Weld County Jail has no progressive movement from the inmate[']s perspective.  There is no way to tell if the plaintiff is close to getting-off.  The reviews are vague at best and don't state clearly the behavior that needs to change for progressive movement back to G.P. (General Population).
>
> Most reviews are based on vague claims of gang or S.T.G. (Security Threat Group) activity or negative jail logs.  Neither [Plaintiff] nor any other inmate on ad-seg is given an opportunity to review these logs or even know the exact content.  Therefore [sic] they cannot deffend [sic] themselves against the claim.  One negative log can keep the plaintiff on ad-seg status.

*Id.* ¶¶ 29-30.  Plaintiff provides further detail regarding the review of an inmate's placement in administrative segregation:

> It is the custom for officers or commanders at the jail to serve ad-seg inmates with a written notice of an ad-seg review.  The inmate has 24 hours from the date and time he received this notice to appeal to the Bureau Chief.  This is done once every 30 days.

*Id.* ¶ 41.

Taking Plaintiff's allegations together and assuming they are true for purposes of this Recommendation, Plaintiff's position is that the monthly review process violates his due process rights because the reviews are: "based on vague claims" and the inmates are not given the opportunity to review the jail's logs when they form the basis for a recommendation that an inmate remain in administrative segregation.  Keeping in mind that

22

the Court's "assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts," *DiMarco,* 473 F.3d at 1342 (citation omitted), the Court will not second-guess the content of the reviews or the jail's ultimate decision to keep Plaintiff in administrative segregation. Considering the facts alleged by Plaintiff, the Court finds that Plaintiff does not have a protected liberty interest in his placement in administrative segregation. First, Plaintiff does not provide any information about why he specifically was kept in administrative segregation. However, he noted that "[m]ost reviews are based on vague claims of gang or S.T.G. (Security Threat Group) activity or negative jail logs." *Compl.* [#10] ¶ 30. Based on this allegation, the Court finds that "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation." *DiMarco,* 473 F.3d at 1342. Further, Plaintiff does not allege that his placement in segregation "increases the duration of confinement." *Id.* In addition, based on his allegation that placement in administrative segregation is reviewed every month, it appears that placement in administrative segregation is not indeterminate. *Id.*

As to the last *DiMarco* factor, Plaintiff alleges that "the conditions of placement are extreme." *Id.*; *Compl.* [#10] ¶¶ 1, 9-10 (alleging that he was denied access to fresh air, outdoor exercise, a "bar," and access to natural light). However, as the Tenth Circuit noted in *Rezaq*, the Supreme Court "called the conditions of confinement in the Ohio supermax prison 'sever[e]' and 'synonymous with extreme isolation' but ultimately placed the weight of its analysis on the indeterminate duration of confinement and the effect the placement had on an inmate's parole eligibility." *Rezaq*, 677 F.3d at 1012-13 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 214 (2005) (modification in original and additional citation omitted).

In *Rezaq*, the court "read *Wilkinson* to say that extreme conditions in administrative segregation do not, on their own, constitute an 'atypical and significant hardship' when compared to "the ordinary incidents of prison life." *Id.* at 1013 (quoting *Sandin*, 515 U.S. at 484). In *Wilkinson*, the Supreme Court noted that the Ohio inmates were "deprived of almost any environmental or sensory stimuli and [ ] almost all human contact." *Wilkinson*, 545 U.S. at 214. It described the conditions of confinement as follows:

> [A]lmost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room.

*Id.* at 223-24. The Court noted that "[s]ave perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities . . . ." *Id.* at 224. Ultimately, the Court found that because placement in that facility was indefinite and placement in the facility "disqualifies an otherwise eligible inmate for parole consideration," the conditions "taken together [ ] impose an atypical and significant hardship within the correctional context." *Id.* Therefore, the Court concluded that the inmates had a liberty interest in avoiding assignment to that facility. *Id.* In *Rezaq*, the Tenth Circuit considered the conditions at the federal government's administrative maximum prison facility ("ADX") and explained that "[t]he conditions at ADX, like those at the Ohio supermax prison in *Wilkinson*, do not, in and of themselves, give rise to a liberty interest because they are substantially similar conditions experienced in any solitary confinement setting." *Rezaq*, 677 F.3d at 1015. The court concluded "that the conditions in the general population unit at ADX are not extreme as a matter of law." *Id.* Here, the conditions Plaintiff complains of are no more severe than the conditions described in *Rezaq*. Accordingly, contrary to Plaintiff's contentions, the conditions he faced in administrative

24

segregation are not "extreme as a matter of law," and "do not, in and of themselves, give rise to a liberty interest . . . ." *Id.* As a result, Plaintiff fails to sufficiently allege a constitutional violation. *See Saucier*, 533 U.S. at 201.

Given that Plaintiff does not allege sufficient facts to establish that Defendants violated his Fourteenth Amendment rights, it is unnecessary for the Court to determine whether Defendants are entitled to qualified immunity with regard to this claim. *Dobbs*, 336 F.3d at 1217 n.15 (citations omitted) (upholding district court's ruling and finding that there was no need to reach the issue of qualified immunity because the defendants were objectively reasonable); *Schnebelen*, 434 F.App'x at 766. In addition, because Plaintiff fails to allege a violation of his Fourteenth Amendment rights, the Court recommends that his second cause of action be **dismissed without prejudice** to the extent it is brought against Defendants Cooke, McGrath, Geesaman, and May in their individual and official capacities. *See Reynoldson*, 907 F.2d at 127.

### IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#30] be **GRANTED**, that Plaintiff's claims against Defendants be **DISMISSED without prejudice**, and that this lawsuit be **DISMISSED**.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  October 22, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge